GINSBERG v. RELIABLE LINEN SERVICE CO.

1. CONTRACTS—INTENT—CONSTRUCTION.
   The language used in a contract, if unambiguous, must be held to express the intention of the parties, and will be confined to its usual and ordinary meaning.

2. SAME—CONSTRUCTION—COURTS.
   The courts will not make new contracts for the parties under the guise of construction.

3. SAME—CONSTRUCTION.
   A contract cannot be made by construction because it later appears that a different agreement should have been consummated in the first instance.

4. MASTER AND SERVANT—WRITTEN CONTRACT OF EMPLOYMENT—PROLONGED DISABILITY—CONTINUANCE OF SALARY.
   Provision of written contract of employment for term of five years that the employee should not be considered as having breached the contract "in the event that he is unable to perform services for the employer because of sickness or disability, and in that event, his salary shall not abate," which fails to stipulate

anything as to duration of sickness or disability, was clear and unambiguous and entitled plaintiff to payment thereunder for period of about three months while he was ill.

5. APPEAL AND ERROR—FINDING OF FACT BY SUPREME COURT—NON-JURY LAW CASE.

In action, tried without a jury, to recover sums alleged to be due plaintiff employee under terms of written contract under which his salary was not to abate in case of illness, evidence *held*, to warrant finding by Supreme Court that plaintiff suffered from a nervous disorder termed conversional hysteria or neurasthenia and was disabled (Court Rule No. 64 [1933]).

6. SAME—NONJURY LAW CASE—FINDING OF FACT BY SUPREME COURT.

The Supreme Court may make findings of fact on appeal in a nonjury law case (Court Rule No. 64 [1933]).

7. DAMAGES—WRITTEN CONTRACT OF EMPLOYMENT—ACCRUED DAMAGES—PRESENT WORTH OF FUTURE EARNINGS—DEDUCTIONS.

Upon remand of action for breach of written contract of employment for period of five years for determination of amount of damages due plaintiff, damages are to be measured by amount plaintiff would have earned up until the time of trial at the contract price and the present worth of what he would be able to earn in the future less any amount he would be able to earn in other employment.

BUSHNELL, C. J., and NORTH and WIEST, JJ., dissenting.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted October 17, 1939. (Docket No. 9, Calendar No. 40,566.) Decided February 14, 1940. Rehearing granted June 18, 1940. Discontinued July 15, 1940.

Assumpsit by Benjamin Ginsberg against Reliable Linen Service Company, a Michigan corporation, for sums due for wages. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Fischer & Fischer* (*O'Hara, Montgomery & Amberson,* of counsel), for plaintiff.

*Butzel, Levin & Winston* (*Chris M. Youngjohn* and *Erwin S. Simon,* of counsel), for defendant.

Chandler, J.  Plaintiff was first employed by defendant in 1921, and remained so employed until the spring of 1935, at which time he was discharged. Thereupon he became associated with two others in a linen supply business, which was operated for a period of approximately one year, at the conclusion of which the business was sold to defendant, the contract of sale providing that the sellers, including plaintiff, were not to engage in the general linen service and laundry business, or a similar business, in certain specified territory for a period of 10 years.  This contract was dated April 30, 1936.

On May 2, 1936, plaintiff again entered the employ of defendant as a salesman and driver for a period of five years, the employment agreement being evidenced by a written contract providing,

"Sixth: It is understood and agreed that employee is not to be considered as having breached this contract of employment in the event that he is unable to perform services for the employer because of sickness or disability, and in that event, his salary shall not abate.  It is also understood and specifically agreed that employee shall be entitled to the usual vacation, with pay, which is received by the other employees of the employer of the same status as is this employee."

Thereafter, plaintiff entered upon the performance of the duties imposed by the employment contract.  He claims that in September, 1936, he first noticed symptoms of an approaching illness; that thereafter the said symptoms became more acute; that in the month of October, 1936, he consulted Dr. Rothman, who advised that the condition of his health was such as to render it imperative that he discontinue his work and advised him to go away for the winter, and a letter from Dr. Rothman was

received by defendant containing the same information.

Plaintiff further claims that he left Detroit early in January, 1937, traveling by train to California; that he returned to Detroit the latter part of the following month, intending to resume his employment, but that he suffered a recurrence of his illness and, after remaining for a period of 10 days, he again returned to California, driving his automobile, where he stayed until the month of May, 1937.

He arrived in Detroit on or about the 7th or 8th of May, and claims that he reported to defendant to resume his employment. At this time, the question arose as to whether he was to be paid wages for the period during which he rendered no services. He testified that during discussion of the question, the following conversation occurred with an officer of the defendant company:

"Mr. Joe Sandler says to me, 'Well, if you will forget about the money you want for the time you were sick.' He says, 'I can't put you back to work if you don't forget it.'

"*Q.* What did he say?

"*A.* 'If you don't forget about the money you have coming for the time you were sick, I can't put you back to work. You will have to waive all rights to your money coming if you want to go back to work.'

"*Q.* What did you say, if anything, at that time?

"*A.* I said, 'I can't do that, Joe. I can't waive any rights to that contract.' He says, 'Well, I can't put you back to work.' I said, 'What do you want me to do?' He said, 'Well, you are through. You might as well get an opinion on the contract right now.' I said I was going to my attorney's office, and he said 'Go ahead.'

"*Q.* And Mr. Ginsberg, did you go to your attorney's office?

"*A.* I did, that morning."

Plaintiff then instituted this suit to recover damages for breach of the employment contract. The case was tried before the court without a jury, resulting in a judgment of no cause of action. This appeal followed.

Defendant claims that plaintiff was not ill and that he went to California in January, 1937, for the sole purpose of visiting his wife and children who had left Detroit in November of that year. It is further asserted as a defense that paragraph 6 of the employment contract, quoted, *supra,* does not contemplate that an employee should be paid wages for an illness of extended duration, but that its operation should be limited to a brief or casual illness or disability.

Among the things pointed out in support of the argument advanced by appellee to establish its claim that paragraph 6 does not contemplate an extended sickness is paragraph 2, which provides:

"The employee agrees to perform his duties to the best of his ability; to perform such services as may be assigned to him by the company; to account for and pay over to the company the proceeds of his collections each day; to endeavor to secure new customers for the° company; to report the name and street address of each new customer, with all reasonable and necessary information required to the company; to comply with all the rules, orders and regulations issued by the company; to devote as much time to his services each and every day as may be reasonably required by the company, such services to be at all times under the direction and control of the company."

This paragraph is not necessarily nullified, as claimed by appellee, if we adopt plaintiff's conten-

tions. Even in its absence, it would be implied that the employee was to perform services for the employer. It can reasonably be said that it specifies and requires that plaintiff should perform certain services under the contract, an exception being granted by paragraph 6, paragraph 2 becoming inoperative in event of sickness or disability. To carry defendant's argument to the extreme would result in a holding that the employee could never recover wages during a period of illness, regardless of the length thereof, because he would not have performed the duties imposed by paragraph 2.

The language used in a contract, if unambiguous, must be held to express the intention of the parties. *Plano Manf'g Co.* v. *Ellis,* 68 Mich. 101. Where there is no ambiguity, the language used will be confined to its usual and ordinary meaning. *Rosen* v. *Rosen,* 159 Mich. 72 (134 Am. St. Rep. 712). The courts will not make a new contract under the guise of construction. *Sturgis National Bank* v. *Maryland Casualty Co.,* 252 Mich. 426. A contract cannot be made by construction because it later appears that a different agreement should have been consummated in the first instance. *Mendelson* v. *Realty Mortgage Corp.,* 257 Mich. 442.

In the light of the fundamental principles applied by the foregoing authorities, it appears to us that paragraph 6 should be held to mean exactly what is stated therein. It says, in substance, that the salary of the employee shall not abate because of sickness or disability. It is clear and unambiguous. It does not say *brief* or *casual* sickness or disability, which words could have been easily inserted, if the parties had so intended, some time during the several days which were consumed in arriving at the terms of the contract. Examined in retrospect, the application of its terms may appear to inflict a hard-

ship upon defendant, yet this does not warrant a remaking of the contract by the court. No room for construction exists.

Was plaintiff sick or disabled during the period elapsing between his departure for California and his return to Detroit? Of this question, the trial court said:

"Now, within the meaning of paragraph 6 of that contract, the so-called illness of the plaintiff does not apply. It was not intended to. And when he went away, he had labored right up to the day he went without saying 'Aye,' 'Yes,' or 'No' about being sick and wanting to lay off for that reason. He went away and stayed about three months in all before the other parties were notified he intended to claim he was sick. He went there for the purpose of seeing his family and visiting his family, and undoubtedly that was what made him nervous in the first place.

"So that, giving that construction to paragraph 6, and considering the further fact, and finding it as a fact, the sickness of which he complained at that time was not contemplated by paragraph 6 of the employment contract, the contract itself was breached by the plaintiff himself in not returning to his work and not continuing with his work, or not notifying his employers of his condition or his intention to work within a reasonable time after he left."

We do not interpret this language as a finding of fact either that plaintiff was or was not ill and disabled. The opinion of the trial court was based upon a construction of the contract in conflict with what has hereinbefore been said.

Much of the record and the briefs of the parties is devoted to this question. It would be of no moment to review the testimony, but examination thereof warrants a finding by us that plaintiff was

and had been suffering from a nervous disorder termed conversional hysteria or neurasthenia and was disabled. Such was the opinion of the four physicians who testified relative to his illness, including Dr. Rothman, produced as a witness by defendant.

This court has authority to make such finding of fact under the provisions of Court Rule No. 64 (1933). See *Fyan* v. *McNutt*, 266 Mich. 406.

The cause should be remanded to the trial court for the assessment of damages, applying the rule as to damages as stated in *Stearns* v. *Railway Co.*, 112 Mich. 651, and *Hollwedel* v. *Duffy-Mott Co., Inc.*, 263 N. Y. 95 (188 N. E. 266, 90 A. L. R. 1312).

Reversed and remanded, for the purpose aforesaid, with costs to plaintiff.

SHARPE, POTTER, and McALLISTER, JJ., concurred with CHANDLER, J.

WIEST, J. (*dissenting*). The trial judge found that plaintiff went to California to be with his wife and children in breach of the contract. Judgment on that finding, supported by credible evidence, is not against the preponderance of the evidence and bars recovery by plaintiff.

Judgment should be affirmed, with costs to defendant.

BUSHNELL, C. J., and NORTH, J., concurred with WIEST, J. BUTZEL, J., did not sit.