## LAMONT *v.* BURDETT OXYGEN COMPANY OF CLEVELAND, INC.

1. CONTRACTS—CONSTRUCTION—INTENT—AMBIGUITIES.
    Courts will construe a written contract according to the intention therein expressed, when that intention is clear upon its face, as it is only in cases of ambiguity in the terms of the contract that courts resort to extraneous evidence to determine the intention of the parties.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts § 240 *et seq.*
[2] 35 Am Jur, Master and Servant § 80.

2. Same—Stock Options—Conditional on Continued Employment. Exercise of stock option which was itself conditioned on continued employment was precluded, when exercise of all rights to stock options was waived for 13 months and employment terminated prior to conclusion of this period.

Appeal from Common Pleas Court of Detroit; Vokes (David C.), J. Submitted Division 1 May 2, 1967, at Detroit. (Docket No. 2,693.) Decided November 30, 1967.

Action by William D. Lamont against Burdett Oxygen Company of Cleveland, Inc., to recover damages of $3,050 based on defendant's refusal to perform under a stock option. Judgment for plaintiff. Defendant appeals. Reversed.

*Wells & Fisher,* for plaintiff.

*Fenton, Nederlander, Tracy & Dodge,* for defendant.

Lesinski, C. J. The instant matter was tried upon stipulated facts in the common pleas court for the city of Detroit. The defendant appeals from an adverse ruling of that court.

On August 1, 1963, the plaintiff, as an employee of the defendant company, was offered a restricted stock option which by its terms granted to an employee the right to purchase annually specified amounts of the company's common stock at prices set forth in the option. The grant of the option reads as follows:

"1. *Grant of option.* The company grants to the employee the right and option to purchase from the company, on the terms and conditions hereinafter set forth, all or any part of an aggregate of *1,000*

shares of authorized, issued and outstanding $1.00 par value common stock of the company, at the purchase price of *$9.50* per share (being 95% of the fair market value per share of said stock at the date hereof) as the employee may from time to time elect, exercisable at the times and for the number of shares as follows: (a) At the end of 1 year, provided the employment between the employee and company shall not have been terminated  *  *  * at the end of 2 years, provided the employment between employee and company shall not have been terminated  *  *  * (b) During the next successive 12-month periods, the first such period commencing 3 years from the date the option shall have been granted and provided further that such employee shall be in the employ of the company."

Section 3 of the restricted stock option entitled "Termination of Option" contained additional conditions. It reads:

"The option and all rights granted hereunder, to the extent such rights shall not have been exercised, shall terminate and become null and void on the terminal date, to-wit 10 years after the date hereof, or sooner if the employee ceases to be an employee of the company (whether by resignation, retirement, dismissal, or otherwise), except that: (a) in the event of the termination of such employment for any reason other than the death of the employee, or if such employee should accept employment with a competitor, or enter into a competitive business without approval of employer, this option shall terminate as to any present or future rights to purchase shares."

On the basis of the aforementioned option, the plaintiff would have been eligible to exercise his rights thereunder on August 1, 1964.

On July 19, 1964, in a letter addressed to the plaintiff and signed by Robert B. May, the treasurer of

the defendant company, the following request was
made:

"The first opportunity to purchase shares under
the option would be August 1, 1964. However, in
view of the company's proposed public offering of
a portion of its $1.00 par value common shares,
we are seeking to defer the first purchase for a
period of 13 months in order that the Burdett
Oxygen Company may be able to comply with the
Securities and Exchange Commission ruling under
Regulation A. By waiving this purchase in no way
would effect the total overall option, but would
merely defer all your rights for the period of 13
months."

At the bottom of the July 19, 1964 letter, there
was included the following language:

"The undersigned holder of an option, dated
August 1, 1963 * * * hereby waives his right to
exercise said option for a period of 13 months
following the proposed public offering described
above."

The plaintiff signed the above waiver thereby as-
senting to its conditions.

On September 1, 1964, the plaintiff voluntarily
resigned from the company, at which time both the
option of August 1, 1963, and the waiver agree-
ment of July 1, 1964, were still in effect. The plain-
tiff made no attempt to exercise the option prior
to his resignation.

On September 28, 1964, in a letter addressed to
the treasurer of the defendant company, the plain-
tiff indicated his desire to exercise his rights under
the option. It reads in part:

"For the record it is not my intent to forfeit the
purchase of stock merely to postpone, as had been
requested, the purchase date.

"I, therefore, wish to exercise my right to purchase the 100 shares of Burdett Oxygen Company stock immediately or at the end of the 13-month waiver period."

In response to the September 28, 1964 letter, the defendant company wrote the following to the plaintiff:

"It is the opinion of counsel that you do not have the right to exercise any part of this option because of your termination of employment prior to the end of the 13-month waiver period. Under the terms of the stock option, you are entitled to exercise that portion of the option that is accrued prior to termination and with the waiving of your rights for the period of 13 months, there would be no rights accrued until the end of the 13-month period."

More than a year later, on November 29, 1965, the plaintiff tendered a check in the amount of $950 in an attempt to exercise his rights under the option, which he contended were still available to him. The tender was refused by the defendant based upon its determination that termination of employment, prior to the expiration of the 13-month waiver period, concluded the plaintiff's rights thereunder. The plaintiff thereafter brought an action for damages in the amount of $3,050 based upon the defendant's refusal to perform under the option agreement.

The court below determined only one issue, namely, that of vesting. It held that the plaintiff's right to exercise the option vested on August 1, 1964, and not at the end of the waiver period. Defendant appeals from the judgment for plaintiff predicated on this determination.

We are thus presented with two instruments, the cumulative legal effect of which is in controversy. One is a stock option and the other a waiver. Both

were drawn by defendant and executed by both parties. The language of the option itself reflects the intention which motivated the grant, as it states that this option is offered "as an inducement to remain in the service of the company and as an incentive for increased effort during such service." *

The option gave the right to purchase stock and unequivocally limited the right to employees of the company. The waiver agreement deferred all rights to exercise the option for a stated period. The use of the all-encompassing adjective "all" made it unnecessary for the defendant to state in the waiver that the right to exercise the option was conditioned on continued employment as this condition was specified in the option itself. The option and waiver must be interpreted according to their plain language and given their obvious meaning. See Baker v. Baird (1890), 79 Mich 255; Gibson v. Agricultural Life Ins. Co. of America (1937), 282 Mich 282; Ginsberg v. Reliable Linen Service Co. (1940), 292 Mich 70; Stott v. Stott Realty Co. (1943), 306 Mich 492.

It is unnecessary to decide whether or not the right to exercise the option was vested subject to divestment on termination of defendant's employment prior to the 13-month period named in the waiver, or whether it had vested at all. Since the exercise of all rights was waived for 13 months, termination of employment prior to the conclusion of this period precluded the exercise of the option which was itself conditioned on continued employment. The stock option condition of section 3, quoted supra, expressly states that rights that have not been exercised terminate on cessation of employment. Plaintiff waived his right to exercise the option for 13 months, terminated his employment,

---

* For discussion of stock options where service of employee is the consideration for the option, see 96 ALR2d 179. For guidelines in interpretation of such stock options, see 96 ALR2d 187.

and has no enforceable right to the stock he later sought to purchase pursuant to the option.

Judgment reversed. Costs to appellant.

J. H. GILLIS and WEIPERT, JJ., concurred.