PERRY v SIED

Docket No. 112898. Argued October 12, 1999 (Calendar No. 12). Decided
        April 25, 2000.

    Sarah Perry brought an action in the Wayne Circuit Court against
        Auto Club Insurance Association for damages resulting from inju-
        ries suffered in an automobile accident involving Michael F. Sied,
        the defendant's insured, while traveling in Ontario, Canada. Both
        drivers are Michigan residents. The insurer entered a power of
        attorney and undertaking (PAU) with the Canadian government,
        agreeing to application of Ontario coverage limits under certain cir-
        cumstances. The plaintiff sought a declaration that the insurance
        coverage applicable was $200,000 in Canadian funds, not the
        $20,000 limit stated in insured's policy. The trial court, Brian K.
        Zahra, J., initially declined to rule on the coverage issue. The par-
        ties eventually entered into a settlement agreement under which
        they submitted the question of plaintiff's total damages to an arbi-
        tration panel, but agreed that they would resubmit the coverage
        issue to the trial court in the event the arbitrators awarded plaintiff
        more than $20,000. After the arbitration panel awarded the plaintiff
        $95,000, she renewed her motion for a declaratory ruling on the
        coverage issue. The trial court granted the motion, reasoning that
        under *ACIA v Lozanis*, 215 Mich App 415 (1996), Ontario's mini-
        mum coverage requirement applied. The Court of Appeals, WHITE,
        P.J., and HOOD and GAGE, JJ., affirmed in an unpublished memoran-
        dum opinion (Docket No. 199915). ACIA appeals.

    In an opinion by Justice TAYLOR, joined by Justices CAVANAGH,
        KELLY, and MARKMAN, the Supreme Court *held*:

    A review of the entire PAU shows that it contemplates an action
        in a Canadian court. Thus, the defendant is not obligated to the
        higher Canadian liability limits under the PAU because the lawsuit
        was not filed in Canada.

    Reversed and remanded.

    Justice CORRIGAN, joined by Chief Justice WEAVER, dissenting,
        stated that the defendant insurer waived its policy limits and
        agreed to provide the greater residual liability coverage. Thus, it
        should be required to provide up to $200,000 in Canadian funds

residual liability coverage for bodily injuries sustained in the Ontario accident.

Michigan law governs construction of the insurance contract to determine the amount of residual liability coverage afforded because the insurer contracted with its insured in Michigan, and the underlying accident involved Michigan residents. However, the insurer explicitly waived the $20,000 limit stated in the policy and agreed to provide up to $200,000 in Canadian funds in residual liability coverage. The plain language of the PAU precludes the insurer from raising "any" defense to "any claim, action, or proceeding" under its automobile insurance contract that it could not assert if it had entered into the contract in accordance with the law of the province in which the action "may be instituted." The clear language of the PAU dictates that it applies not only to actions actually brought in an Ontario court, but to actions that could have been brought in an Ontario court.

By entering into the PAU, the insurer effectively submitted to Ontario law in this case. It expressly waived its policy limits and agreed to application of the Ontario coverage limits under the PAU. The PAU applies because this action could have been instituted in Ontario and the insurer's assertion of its policy limits constitutes a defense. Therefore, the insurer should be required to provide coverage of $200,000 in Canadian funds.

Justice YOUNG took no part in the decision of this case.

*Bernstein & Bernstein, P.C.* (by *Michael J. Butler*), for plaintiff-appellee.

*Robert J. Dotson; Garan, Lucow, Miller & Seward, P.C.*, of counsel (by *Daniel S. Saylor*), for intervening defendant-appellant.

TAYLOR, J. The issue in this case is whether a power of attorney and undertaking (PAU)[1] intervening defendant Auto Club Insurance Association filed with

---

[1] As a requisite to do business in Ontario and other Canadian provinces insurance companies must execute PAUs. The entire PAU is reproduced as an appendix hereto. The PAU is essentially a contract ACIA has with the government of Ontario. The proper construction and interpretation of this contract is a question of law we review de novo. *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998).

the Canadian government applies to plaintiff's Michigan lawsuit. If the PAU applies, defendant's potential liability would be $200,000 in Canadian funds rather than the insurance policy limit of $20,000 U.S. funds. We hold that defendant's expanded obligations under the PAU are limited to lawsuits filed in Canada and therefore the PAU does not apply to this lawsuit. We therefore reverse the judgment of the Court of Appeals and remand for further proceedings.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

This case arises from an automobile accident involving two Michigan residents who were traveling in Windsor, Ontario, Canada. Defendant's insured rear-ended plaintiff's vehicle. Plaintiff commenced this lawsuit in Wayne County against defendant's insured, alleging that she suffered a serious impairment of bodily function and permanent serious disfigurement.[2] The policy that defendant's insured purchased limits defendant's liability for bodily injury to each injured person to $20,000, with its maximum liability for each occurrence limited to $40,000. However, defendant has filed a PAU with the Canadian government, wherein it agreed in part that it would:

[n]ot . . . set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract had been entered into in, and in accordance with the law relating to motor-vehicle liability insurance contracts of the Province or Territory of Canada in which such action or proceeding may be instituted, and to satisfy any final judgment rendered against it or its insured by a Court in such

[2] MCL 500.3135(1); MSA 24.13135(1).

Province or Territory, in the claim, action, or proceeding,
up to

   (1) the limit or limits of liability provided in the contract;
but

   (2) in any event an amount not less than the limit or lim-
its fixed as the minimum[3] for which a contract of motor-
vehicle liability insurance may be entered into in such Prov-
ince or Territory of Canada, exclusive of interest and costs
and subject to any priorities as to bodily injury or property
damage with respect to such minimum limit or limits as
may be fixed by the Province or Territory.

Plaintiff moved for a declaratory ruling that the PAU
applied, making the applicable insurance coverage
$200,000 in Canadian funds rather than the $20,000
limit stated in the insurance policy. Plaintiff argued
that defendant, contrary to the PAU, was setting up a
defense of limit of liability less than the $200,000 min-
imum coverage prescribed by Canadian law. Defend-
ant intervened as a real party in interest to contest
plaintiff's request.

The parties eventually entered into a settlement
agreement under which they submitted the question
of plaintiff's total damages to an arbitration panel and
plaintiff released her claims against defendant's
insured in exchange for $20,000. The parties agreed
that they would resubmit the coverage issue to the
trial court in the event the arbitrators awarded plain-
tiff more than $20,000. Plaintiff further agreed that
she would not seek recovery from defendant's
insured.

The arbitration panel awarded plaintiff $95,000.
Plaintiff then renewed her motion for a declaratory
ruling on the coverage issue. The trial court held that

---

   [3] The minimum is $200,000 in Canadian funds.

pursuant to *ACIA v Lozanis*, 215 Mich App 415; 546 NW2d 648 (1996), Ontario's $200,000 minimum coverage requirement applied to this case.[4]

Defendant appealed, and the Court of Appeals affirmed in an unpublished decision stating in pertinent part:

> We agree that *Lozanis, supra,* is controlling. In *Lozanis,* the claimant was injured by an unidentified motorist in Ontario. *Id.,* pp 416-417. The claimant's uninsured motorist policy with ACIA had $20,000 limits. Although the claimant filed suit in Ontario, that suit was enjoined. *Id.,* p 417. This Court concluded that ACIA had agreed in the PAU filed with the Canadian government not to assert policy limits below $200,000 against an insured injured in Ontario. *Id.,* pp 419-420. ACIA was therefore subjected to Canadian law, and the fact that ACIA had filed suit in Macomb County was not dispositive, since it had agreed to provide coverage for its insureds traveling in Canada. *Id.,* p 420. The Court concluded that the PAU did not require that the action be filed in Canada. *Id.*
>
> Following *Lozanis,* we conclude that here, too, the fact that the action was filed in Wayne County is not dispositive. The accident occurred in Ontario, and ACIA agreed in the PAU to provide coverage up to the Ontario limits. Although the claimant in *Lozanis* filed suit in Ontario, that suit was enjoined and was not the basis for this Court's decision applying the Ontario limits. Neither *Lozanis* nor the instant case involved an Ontario judgment. We find *Lozanis* to be controlling authority for the application of the Ontario limits in this case.[5]

---

[4] The trial court indicated that it believed *Lozanis* was "poorly reasoned," but that it was nevertheless duty bound to follow it.

[5] Unpublished memorandum opinion, issued July 31, 1998 (Docket No. 199915).

Defendant appealed and we granted its application for leave to appeal.[6]

## II. OTHER COURT HOLDINGS

There is no dispute that the higher Canadian limits would apply if plaintiff had filed her lawsuit in Ontario. However, she filed her lawsuit in Michigan. Hence, the real issue is whether the PAU applies when a lawsuit is filed in Michigan that could have been filed in Canada.

Three sister state courts have addressed the issue whether a PAU applies when a lawsuit is filed, not in Canada, but in one of our states.[7]

In *Mindell v Travelers Indemnity Co*, 46 AD2d 263; 361 NYS2d 777 (1974), a passenger was injured in a one-car accident in Ontario. A lawsuit was filed in New York. The plaintiff argued that the insurance company which had filed a PAU with Ontario was liable, not for the policy limits of $10,000 but the higher Ontario limit. After examining the PAU the court stated:

It is clear from the language and context of the foregoing undertaking . . . that the provision quoted refers only to a

---

[6] 459 Mich 989 (1999).

[7] The issue was also considered in an unpublished federal district court opinion. In *O'Shei v Maryland Casualty Co*, 1986 WL 1616 (WD NY, 1986), a bicyclist was killed by an uninsured motorist in Ontario. A lawsuit was filed in New York against Maryland Casualty. The plaintiff argued the insurance company was obligated to pay Ontario minimum limits for uninsured motorist coverage because the insurance company had filed a PAU with the Canadian government. The federal court examined the PAU and held that the insurance company had only obligated itself to satisfy final judgments rendered against it by Canadian courts and that the PAU did not indicate any agreement to satisfy judgments entered against it by courts outside Canada. *Id.* at 8, n 3.

claim, action or proceeding prosecuted in a Canadian Prov-
ince or Territory, and that the insurer's agreement not to set
up certain defenses . . . extended only to such actions. It
was in no respect an agreement to forego those defenses—
and to assume an increased liability—in the present New
York action. [*Id.* at 266.]

This decision by New York's intermediate appellate
court was unanimously affirmed by New York's high-
est appellate court.[8]

In *Fiste v Atlantic Mut Ins Co*, 94 Ohio App 3d 165;
640 NE2d 551 (1994), an Ohio resident was injured
by a Canadian citizen in a car accident while driving
in Ontario. The plaintiff did not receive enough from
the tortfeasor's insurer to cover his damages and sub-
sequently sued his own insurance company in Ohio
for additional payment. Auto Club Insurance Com-
pany paid the plaintiff the $5,000 due under its policy.
The plaintiff argued that the insurance company
which had a PAU with Ontario was responsible for an
additional amount under Canadian law. The court
rejected plaintiff's claim, stating:

Auto Club's execution of this power of attorney and
undertaking by which it agreed to abide by Canadian law is
not decisive of the issues herein, since that document
applies only to causes of action arising in Canada and liti-
gated in Canadian courts. The power of attorney and under-
taking does not purport to require Auto Club to be bound
by Canadian law with respect to actions against Auto Club
by Ohio residents arising out of a contract of insurance exe-
cuted in Ohio. [*Id.* at 168-169.]

In *Motorists Mut Ins Co v Howard*, 110 Ohio App
3d 709, 713-714; 675 NE2d 51 (1996), the Ohio Court

---

[8] Order affirmed without opinion, 38 NY2d 815; 345 NE2d 584 (1975).

of Appeals, without citation to or apparent knowledge of *Mindell*, or *O'Shei*, reached a contrary result involving a PAU stating:

> [I]t is not necessary for [the insured] to file an action in Canada to enforce the power of attorney agreement. This agreement does not state as a condition precedent to enforcement that an individual must institute an action in Canada, and, indeed, the plain language states that an action may be instituted in Canada.[9]

As previously indicated, our Court of Appeals also addressed a defendant's PAU in *Lozanis*. In *Lozanis*, a Michigan resident was injured while driving in Ontario. Because the driver of the truck that hit Mr. Lozanis' vehicle was never identified, Lozanis sought uninsured motorist benefits for his injuries. Lozanis filed a lawsuit in Ontario seeking $200,000 in Canadian funds, rather than the $20,000 in U.S. funds provided for in his insurance policy for uninsured motorist coverage. The ACIA sued Lozanis in Michigan and obtained an injunction forbidding him from continuing his Ontario lawsuit on the basis that the insurance policy required claims to be arbitrated. The circuit court did however hold that the PAU applied so that $200,000 in benefits was available. The ACIA appealed, and the Court of Appeals considered whether the PAU precluded the defendant from asserting uninsured motorist policy limits of lower than $200,000 in Canadian funds in an action by its insured arising from an

---

[9] We note that this paragraph was nonbinding dicta because the court had already decided that Canadian law applied pursuant to a provision in the insurance policy before it discussed the PAU. In Ohio, as in Michigan, observations by way of obiter dicta are not binding. *Ecker v Cincinnati*, 52 Ohio App 422, 425; 3 NE2d 814 (1936); *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 596; 374 NW2d 905 (1985).

Ontario accident. The Court rejected the defendant's argument that the forum of the action determines whether the PAU applies, reasoning that the defendant submitted to Ontario law by agreeing to the PAU, and its execution of that document negated its contention that it did not intend to provide insurance coverage for its insureds who traveled in Canada.

### III. ANALYSIS OF THE PAU

The PAU has an introductory paragraph and then has four undertakings labeled A, B, C and D. A review of the entire document shows that the PAU contemplates an action in a Canadian court.

The introductory paragraph requires the ACIA to appoint an official to receive service of process on its behalf, and requires it to promise to appear in a Canadian court in any claim filed there. Clearly this paragraph envisions a Canadian lawsuit.

In the first undertaking, the ACIA agrees to appear in any action against it or its insured in any province or territory in which such an action has been instituted. This paragraph also contemplates a lawsuit in Canada.

In the second undertaking the ACIA agrees to cause notice or process to be served upon the insured upon receipt from any of the Canadian superintendents of insurance and Canadian registers of motor vehicles mentioned in the introductory paragraph of the PAU. Once again, this paragraph contemplates a Canadian lawsuit.

In the third undertaking, the ACIA agrees

[n]ot to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract

entered into by it, which might not be set up if the contract
had been entered into in, and in accordance with the law
relating to motor-vehicle liability insurance contracts of the
Province or Territory of Canada in which such action or
proceeding *may* be instituted, and to satisfy any final judg-
ment rendered against it or its insured by a Court in such
Province or Territory, in the claim, action, or proceeding,
up to . . . . [Emphasis added.]

The dissent focuses on the word *may* in this para-
graph and argues that "may" implies permission, and
thus that the ACIA has waived certain defenses in
cases that "may" have been brought in a Canadian
court. We cannot agree. Such an interpretation
ignores the impetus of the whole of the PAU contrary
to the well-established principle that contracts are to
be construed in their entirety.[10] We believe the use of
the word "may" in context reflects the disjunctive
nature of the previous phrase in the PAU. Hence use of
"may" in this context implies that the PAU applies in
whatever province or territory the suit is brought, not
that the ACIA waives defenses in any forum in which
suit could be brought. This is consistent with the last
portion of the cited language wherein the ACIA
promises to satisfy any judgment issued by a Cana-
dian court on the claim. This language certainly sug-
gests a Canadian lawsuit.

The fourth undertaking relates to insurance cards
and does not shed light on the issue at hand.

After review of the entire PAU, we are satisfied that
the ACIA's additional obligations only apply when a
lawsuit is filed in Canada.

---

[10] See 3 Corbin, Contracts, § 549, pp 183-186  (contracts are to be inter-
preted and their legal effects determined as a whole).

As to *Lozanis*, we find that the Court of Appeals reached the right result, but that it did not properly analyze the PAU. We believe the right result was reached because Lozanis did institute a lawsuit in Canada making the PAU applicable. The Canadian lawsuit was, however, enjoined at the ACIA's request and the matter was resolved in a state court. Thus, the state court lawsuit, was a substitute for the Canadian lawsuit and the PAU did apply. Indeed, any other resolution would have allowed the ACIA to avoid its obligations under the PAU. However, we disagree with the *Lozanis* Court to the extent that it suggested that the forum of the lawsuit did not affect whether the PAU applied.

Finally, we note that Canadian courts also understand PAUs to apply on the basis of where an action is litigated. In *Potts v Gluckstein*, 8 OR3d 556, 558 (Ont Ct App, 1992),[11] a plaintiff from British Columbia was injured by an Ontario defendant and brought suit in Ontario. The Ontario court, discussing the reciprocal insurance scheme, which "is based upon a Power of Attorney and Undertaking," stated:

> In the event of an accident, *the insurer agrees to be bound by the law of the province or territory where the action is brought* and not the province where the policy is issued. The insurer also accepts liability to the limits prescribed in its policy or, at least, to the minimum limits established in the province or territory *where the action is brought.* [Emphasis added.]

Later in its opinion, the court noted its earlier decision in *MacDonald v Proctor*, 19 OR2d 745 (Ont Ct App, 1977), in which it stated that the effect of the PAU was to commit the insurer

---

[11] Ontario's highest court.

> to . . . observe Ontario rules to a certain extent, *where its
> insured is involved in Ontario proceedings,* [but that the
> PAU did not convert] the Manitoba policy [involved in *Mac-
> Donald*] [into] one that is "made in Ontario." [Emphasis
> added.]

The Ontario courts have turned to this formulation
repeatedly.[12]

Similarly, courts in other provinces have suggested
that by issuing a PAU, the insurer agrees to be bound
by the laws of the forum, not any possible forum. For
example, in *Court v Alberta Motor Ass'n Ins Co*, 47
ACWS3d 610 (BC Sup Ct, 1994), an Alberta plaintiff
sued an Alberta defendant in a British Columbia court
for an accident that occurred in British Columbia.
The court applied British Columbia law, stating:

> [I]n any action in British Columbia against [the insurer]
> arising out of an automobile accident in British Columbia,
> [the insurer] is precluded from setting up any defence to
> the claim, including a defence to the limit of liability, that
> might not be set up if the policy were one issued in British
> Columbia.

The British Columbia court required that the action
be in British Columbia for that province's law to
apply.

Also instructive is the British Columbia Court of
Appeals decision in *Marchand v Alberta Motor Ass'n
Ins Co*, 47 ACWS3d 714 (BC Ct App, 1994). There,
two parties from Alberta had an accident in British
Columbia. An insurance company challenged the Brit-

---

[12] See *Wardon v MacDonald*, 55 OR2d 182 (Ont Dist Ct, 1986); *Healy v
Interboro Mut Indemnity Ins Co*, 1999 Ont C A LEXIS 187 (Ont Ct App,
1999) ("a participating insurer agrees to be bound by the law concerning
compulsory automobile insurance coverage of the province *where the
action against it is brought*"). (Emphasis added.)

ish Columbia action, saying the plaintiff only chose that forum because the defendant insurer executed a PAU with the British Columbia government. By suing in British Columbia, then, the plaintiff could take advantage of liability minimums higher than those in both parties' home jurisdiction of Alberta. Ultimately, the court allowed the action because the accident occurred in British Columbia, but the defendant's argument, which the court acknowledged, rests on the fact that had the suit been brought in Alberta, the provisions of the PAU would have been ineffective despite that the accident occurred in British Columbia. That is because the PAU only requires insurers not to raise defenses that would not be allowed under the law where the suit is brought.[13]

### IV. CONCLUSION

We conclude that defendant is not obligated to the higher Canadian liability limits under the PAU because the lawsuit was not filed in Canada. We therefore reverse the judgment of the Court of Appeals. We remand to allow the trial court to consider plaintiff's alternative argument under MCL 500.3131(1); MSA 24.13131(1).

CAVANAGH, KELLY, and MARKMAN, JJ., concurred with TAYLOR, J.

---

[13] See also Kent, *No-fault benefits in British Columbia: Must out-of-province auto insurers pay the same as ICBC?*, 13 Can J Ins L 39, 43 (1995) ("It will be recalled that both [a statutory provision] and the PAU apply only if the lawsuit is brought in B.C.").

CANADA NON-RESIDENT INTER-PROVINCE
MOTOR-VEHICLE LIABILITY INSURANCE CARD

## POWER OF ATTORNEY AND UNDERTAKING

Auto Club Insurance Association
(Name of company.)

**RECEIVED**

AUG 6 1981

SUPERINTENDENT OF BROKERS,
INSURANCE & REAL ESTATE

the head office of which is in the City of................ Dearborn

in the...... State ............ of............ Michigan
(Province or State.)

in the United States of America ...., hereby, with respect to an action or proceeding against it or its
(Country.)
insured, or its insured and another or others, arising out of a motor-vehicle accident in any of the respective
Provinces or Territories, appoints severally the Superintendents of Insurance of British Columbia, Alberta,
Saskatchewan, and Manitoba, the Registrars of Motor Vehicles of Ontario, New Brunswick, Nova Scotia,
Prince Edward Island, and Newfoundland, the Director of the Motor Vehicle Bureau of Quebec, the Com-
missioners of Yukon Territory and the Northwest Territories, or such official as may from time to time be
designated by the Provinces or Territories concerned, to do and execute all or any of the following acts, deeds,
and things, that is to say: To accept service of notice or process on its behalf.

Auto Club Insurance Association
(Name of company.)
..............aforesaid hereby undertakes:—

A. To appear in any action or proceeding against it or its insured in any Province or Territory in which
such action has been instituted and of which it has knowledge:

B. That upon receipt from any of the officials aforesaid of such notice or process in respect of its
insured, or in respect of its insured and another or others, it will forthwith cause the notice or process
to be personally served upon the insured:

C. Not to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insur-
ance contract entered into by it, which might not be set up if the contract had been entered into in,
and in accordance with the law relating to motor-vehicle liability insurance contracts of the Province
or Territory of Canada in which such action or proceeding may be instituted, and to satisfy any final
judgment rendered against it or its insured by a Court in such Province or Territory, in the claim,
action, or proceeding, up to

(1) the limit or limits of liability provided in the contract; but

(2) in any event an amount not less than the limit or limits fixed as the minimum for which a
contract of motor-vehicle liability insurance may be entered into in such Province or Territory of
Canada, exclusive of interest and costs and subject to any priorities as to bodily injury or property
damage with respect to such minimum limit or limits as may be fixed by the Province or Territory.

D. That it will not issue motor-vehicle liability insurance cards supplied to it by the Superintendent of
Insurance of British Columbia, except to persons who are non-residents of Canada and who are
insured with it under a contract of motor-vehicle liability insurance.

IN WITNESS WHEREOF the said Company has caused its corporate seal to be affixed hereto duly attested

by the hands of its proper officers in that behalf at the City of................ Dearborn ............ ... .

in the........ State ............... of............ Michigan

this........ 3rd ........day of............ August ............, A.D. 19 81

**RECEIVED**

SEP 2 1 1981

SUPERINTENDENT OF BROKERS,
INSURANCE & REAL ESTATE

C. R. Benson
Clifford R. Benson
Secretary

Peter R. Erickson
Peter R. Erickson
Underwriting Manager

CORRIGAN, J. I respectfully dissent from the majority's conclusion that the power of attorney and undertaking (PAU) does not apply to this case. I would affirm the decision of the Court of Appeals because defendant insurer waived its policy limits and agreed to provide the greater residual liability coverage.

I. THE PAU

Under the PAU, defendant insurer agreed to,

> with respect to an action or proceeding against it or its insured, or its insured and another or others, arising out of a motor-vehicle accident in any of the respective Provinces or Territories, appoint[] severally the Superintendents of Insurance of British Columbia, Alberta, Saskatchewan, and Manitoba, the Registrars of Motor Vehicles of Ontario, New Brunswick, Nova Scotia, Prince Edward Island, and Newfoundland, the Director of the Motor Vehicle Bureau of Quebec, the Commissioners of Yukon Territory and the Northwest Territories, or such official as may from time to time be designated by the Provinces or Territories concerned, to do and execute all or any of the following acts, deeds, and things, that is to say: To accept service of notice or process on its behalf.

Defendant further agreed to the following:

> A. To appear in any action or proceeding against it or its insured in any Province or Territory in which such action has been instituted and of which it has knowledge:
>
> B. That upon receipt from any of the officials aforesaid of such notice or process in respect of its insured, or in respect of its insured and another or others, it will forthwith cause the notice or process to be personally served upon the insured:
>
> C. Not to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract

had been entered into in, and in accordance with the law relating to motor-vehicle liability insurance contracts of the Province or Territory of Canada in which such action or proceeding may be instituted, and to satisfy any final judgment rendered against it or its insured by a Court in such Province or Territory, in the claim, action, or proceeding, up to

(1) the limit or limits of liability provided in the contract; but

(2) in any event an amount not less than the limit or limits fixed as the minimum for which a contract of motor-vehicle liability insurance may be entered into in such Province or Territory of Canada, exclusive of interest and costs and subject to any priorities as to bodily injury or property damage with respect to such minimum limit or limits as may be fixed by the Province or Territory.

D. That it will not issue motor-vehicle liability insurance cards supplied to it by the Superintendent of Insurance of British Columbia, except to persons who are non-residents of Canada and who are insured with it under a contract of motor-vehicle liability insurance.

Power of attorney and undertakings are part of a "reciprocal scheme" designed to provide "a uniform basis for the enforcement of motor vehicle insurance claims in Canada." *Potts v Gluckstein*, 8 OR3d 556, 558 (Ont Ct App, 1992). That scheme "ensures that a person who has entered into a motor vehicle insurance contract in one province is recognized as insured in other provinces." *Id.* The scheme is, however, also open to participation by United States insurers who do not insure Canadian residents and their automobiles. *Id.*; *Schrader v United States Fidelity & Guaranty Co*, 59 OR2d 178 (1987), modified 59 OR2d 797 (1987). Those insurers file a PAU with the Canadian government to ensure that their

insureds have the required coverage when driving in Canada.

## II. RESIDUAL LIABILITY COVERAGE

The instant case sounds in contract, not tort. I agree with defendant that Michigan law governs construction of its contract to determine the amount of residual liability coverage afforded because defendant contracted with its insured in this state and the underlying accident involved Michigan residents. See *Chrysler Corp v Skyline Industrial Services, Inc*, 448 Mich 113; 528 NW2d 698 (1995); see generally *Sutherland v Kennington Truck Service, Ltd*, 454 Mich 274; 562 NW2d 466 (1997). I conclude, however, that defendant explicitly waived the $20,000 limit stated in the policy and agreed to provide up to $200,000 in Canadian funds in residual liability coverage in this case.

### A

I agree with the Court of Appeals that the PAU applies to this case. Concededly, the policy that the insured purchased limits defendant's liability for bodily injury to each injured person to $20,000. Nonetheless, under the PAU, defendant intentionally relinquished its right to assert defenses that it could not assert if it had entered into the policy in, and in accordance with the law of, Ontario. Accordingly, defendant expressly waived the policy limits by entering into the PAU with the Canadian government. See *Book Furniture Co v Chance*, 352 Mich 521, 526; 90 NW2d 651 (1958) ("[w]aiver is the intentional relinquishment of a known right"); see also *Dahrooge v*

*Rochester German Ins Co*, 177 Mich 442, 451-452; 143 NW 608 (1913).

Under the PAU, defendant agreed that it would

> [n]ot . . . set up *any* defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up *if* the contract had been entered into in, and in accordance with the law relating to motor-vehicle liability insurance contracts of the Province or Territory of Canada in which such action or proceeding *may* be instituted . . . . [Emphasis added.]

I cannot join the majority's construction of this provision. Where no ambiguity exists, the terms of the contract control. *Hank v Lamb*, 310 Mich 81, 88; 16 NW2d 671 (1944). We interpret the language used in the contract in accordance with its usual and ordinary meaning. *Ginsberg v Reliable Linen Service Co*, 292 Mich 70, 75; 290 NW 331 (1940). In this case, the plain language of the PAU precludes defendant from raising "any" defense to "any claim, action, or proceeding" under its automobile insurance contract that it could not assert if it had entered into the contract in accordance with the law of the province in which the action "may be instituted." The verb "may" expresses possibility or permission. *Random House Webster's College Dictionary*, p 838. Therefore, the clear language of the PAU dictates that it applies not only to actions actually brought in an Ontario court, but to actions that could have been brought in that court.

I disagree with the majority's determination that, instead of its common meaning, "use of 'may' in this context implies that the PAU applies in whatever province or territory the suit is brought . . . ." *Ante* at 689. Although this Court construes a contract as a

whole,[1] it will not make a new contract for the parties. *Ginsberg, supra* at 75. "A contract cannot be made by construction because it later appears that a different agreement should have been consummated in the first instance." *Id.* The majority's interpretation of the term "may" essentially inserts the Canadian province limitation contained in the satisfaction of judgment clause into the waiver of defenses clause. Unlike the majority, I would not remake the PAU through the addition of that limitation. See *Klever v Klever*, 333 Mich 179, 187; 52 NW2d 653 (1952).

By its terms, the PAU applies to "an action or proceeding against it or its insured, or its insured and another or others, arising out of a motor-vehicle accident in any of the respective Provinces or Territories . . . ." This action clearly arises out of an Ontario accident, and thus, falls within the scope of the PAU. Construing the term "may" in accordance with its plain meaning furthers the underlying purpose of the PAU—to provide "a uniform basis for the enforcement of motor vehicle insurance claims in Canada." *Potts v Gluckstein, supra* at 558. The majority's construction results in the opposite because different coverage levels apply, depending on the forum of the lawsuit.

The majority's approval of the result in *ACIA v Lozanis*, 215 Mich App 415; 546 NW2d 648 (1996), illustrates the problematic nature of its construction. In *Lozanis*, the insured brought an action in Ontario despite an arbitration clause in his insurance policy. Under the majority's view, the filing of the Ontario action is dispositive for purposes of determining coverage, even though a Michigan court subsequently

---

[1] *Singer v Goff*, 334 Mich 163, 168; 54 NW2d 290 (1952).

enjoined the insured from pursuing his claim in the Ontario court. The majority's holding will simply encourage Michigan residents to file suit against their Michigan insurers and other Michigan residents in a foreign jurisdiction. Henceforth, few Michigan insureds will bring actions arising out of an Ontario accident in a Michigan court.

In my view, the Court of Appeals adopted the correct construction of the PAU in *Lozanis, supra* at 421. *Lozanis* considered whether the PAU precluded defendant insurer from asserting uninsured motorist policy limits of lower than $200,000 in Canadian funds in an action by its insured arising from an Ontario accident. The Court rejected defendant's argument that the forum of the action determines whether the PAU applies, reasoning that defendant submitted to Ontario law by agreeing to the PAU and that its execution of that document negated its contention that it did not intend to provide insurance coverage for its insureds who traveled in Canada.

In *Motorists Mut Ins Co v Howard*, 110 Ohio App 3d 709, 713-714; 675 NE2d 51 (1996), the Court of Appeals of Ohio reached the same conclusion when construing identical language in a PAU between another insurer and the Canadian government. That court explained:

> Clearly, this provision precludes [the insurer] from asserting "any defence" to "any claim" that it would not be allowed to assert if the insurance policy were entered into "in accordance with the law relating to motor-vehicle liability insurance contracts" of Ontario, Canada. . . . Further, it is not necessary for [the insured and his passenger] to file an action in Canada to enforce the power of attorney agreement. This agreement does not state as a condition precedent to enforcement that an individual must institute an

action in Canada, and, indeed, the plain language states that an action may be instituted in Canada. We believe that the proper construction of [the insurer's] power of attorney agreement with Canada is that when one of [the insurer's] insureds is involved in a collision in Canada, [the insurer] is bound by the applicable laws of Canada relating to compensation of person injured in that collision.

I agree with *Lozanis* and *Howard.* By entering into the PAU, defendant effectively submitted to Ontario law in this case.

B

I would decline, however, defendant's invitation to construe the PAU as simply incorporating the restrictions placed on insurers licensed "to carry on automobile insurance in Ontario" under Ontario law. Ont Rev Stat 1980, ch 218, § 25(1), provides in part:

A licence to carry on automobile insurance in Ontario is subject to the following conditions:

1. In any action in Ontario against the licensed insurer or its insured arising out of an automobile accident in Ontario, the insurer shall appear and shall not set up any defence to a claim under a contract made outside Ontario, including any defence as to the limit or limits of liability under the contract, that might not be set up if the contract were evidenced by a motor vehicle liability policy issued in Ontario and such contract made outside Ontario shall be deemed to include the benefits set forth in Schedule C.

Ont Rev Stat 1980, ch 218, § 25(1) effectively creates an exception to the general rule that the Ontario Insurance Act does not apply to policies covering

automobiles that need not be registered in Ontario.[2] Ont Rev Stat 1980, ch 218, § 202(2). The insurer must provide the coverage required by Ont Rev Stat 1980, ch 218, § 219(1), which provides:

> Every contract evidenced by a motor vehicle liability policy insures, in respect of any one accident, to the limit of at least $200,000, exclusive of interest and costs, against liability resulting from bodily injury to or the death of one or more persons and loss of or damage to property.

In *Schrader v United States Fidelity & Guaranty Co*, 59 OR2d 178 (1987), modified 59 OR2d 797 (1987), the Ontario Divisional Court concluded that § 25 precludes insurers who carry automobile insurance in Ontario from asserting the defense that their United States policies do not include coverages or limits mandated by the Ontario Insurance Act. The court, however, subsequently learned that the insurer involved in *Schrader, supra,* was not licensed to do business in Ontario, but rather had filed a power of attorney and undertaking with the provincial superintendent of insurance. The court accepted the insurer's concession that the "same result would have been reached by reason of the filing of the power of attorney and undertaking in Ontario by a foreign insurer." *Id.* at 797.

I recognize that Ont Rev Stat 1980, ch 218, § 25(1) only applies to an "action in Ontario." Unlike the stat-

---

[2] Under Ontario law, an owner of a motor vehicle who does not reside or carry on business in Ontario for more than three months in any one year need not register the vehicle if (1) the country or state of residence grants a similar exemption for vehicles owned by residents of Ontario and registered therein, and (2) the vehicle is registered in that country or state and displays registration plates. Ontario Highway Traffic Act, Ont Rev Stat 1980, ch 198, § 15(3). Michigan grants a similar exemption for a nonresident's vehicle that is properly registered in the place of residence and displays a valid registration certificate and plate. MCL 257.243; MSA 9.1943.

ute, however, the PAU does not limit its application to actions brought in Ontario and other provinces. Instead, its plain language precludes defendant from raising "any" defense to "any claim, action, or proceeding" under its automobile insurance contract that it could not assert if it had entered into the contract in accordance with the law of the province in which the action "may be instituted."

In this case, defendant expressly waived its policy limits and agreed to application of the Ontario coverage limits under the PAU. The PAU applies because this action could have been instituted in Ontario[3] and defendant's assertion of its policy limits constitutes a defense. See *Potts, supra* at 560 (the term "defence" includes any defense that the policy does not include coverages or limits mandated by the Ontario insurance act). I would therefore conclude that defendant must provide coverage of $200,000 in Canadian funds.

### III. CONCLUSION

I conclude that defendant insurer waived its policy limits and must provide up to $200,000 in Canadian funds in residual liability coverage for bodily injuries sustained in the Ontario automobile accident involving its Michigan insured and plaintiff. I would therefore affirm the decision of the Court of Appeals. Accordingly, I dissent.

WEAVER, C.J., concurred with CORRIGAN, J.

YOUNG, J., took no part in the decision of this case.

---

[3] Under the PAU, defendant appointed the registrar of motor vehicles of Ontario to accept service of process or notice on its behalf of an action or proceeding against it or its insured arising out of a motor vehicle accident in Ontario. Defendant further agreed to appear in any Ontario action against it or its insured and to personally serve the notice or process on its insured.