NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0653n.06

No. 15-1242

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RAFAH DAWOOD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JPMORGAN CHASE BANK, N.A.; FIFTH THIRD | ) | COURT FOR THE EASTERN |
| BANK, N.A., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**FILED**
Sep 25, 2015
DEBORAH S. HUNT, Clerk

BEFORE:     KEITH, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge.  After Rafah Dawood's home burned down, Dawood and her insurer, Farmers Insurance, entered into a joint stipulation, whereby: (1) Farmers agreed to promptly pay Dawood $175,000; (2) Dawood released Farmers "from any and all [further] liability, claims, [and] demands" concerning losses from the fire; and (3) Farmers agreed "to pay either a negotiated settlement amount or up to the full amount of any liens against the insured property." Farmers negotiated a settlement with JPMorgan Chase, which was acting as the agent of Deutsche Bank, which held the mortgage to Dawood's property. Before Farmers could pay the settlement, however, Dawood brought this suit, claiming that she was entitled to some or all of the proceeds from the settlement and that Chase had no right to those proceeds. The plain meaning of the joint stipulation makes clear that Dawood's claims are without merit. When she agreed to the joint stipulation, Dawood waived any right she might have had to the settlement

proceeds. Conversely, the terms of the joint stipulation establish that Chase is entitled to payment of the full amount of the settlement.

The district court described the facts underlying this case as follows:

> Rafah Dawood, and her husband, Weeam Dawood, were the owners of a home located at 6306 Branford Drive in West Bloomfield, Michigan. On December 30, 2010, a fire occurred at the residence resulting in the home's destruction. The home was insured against loss due to fire pursuant to a Farmers insurance policy ("the policy"), which named Chase as the payee. At the time of the fire, the home was encumbered by two mortgages and a junior lien. The first mortgage on the home was held with Washington Mutual Bank ("WaMu), and was refinanced on October 4, 2004 in the amount of $715,000.00. Chase issued a second mortgage on March 4, 2005, which was used to secure a home equity line of credit in the amount of $359,650. Additionally, IndyMac Bank ("IndyMac") held a junior lien . . . in the amount of $176,400, which was also used to secure an equity line of credit.

> Chase became the successor in interest to the mortgage held by WaMu, and on March 30, 2009 Chase assigned the $715,000 mortgage on the home to Deutsche Bank National Trust Company ("Deutsche Bank"). . . . On January 22, 2013, Chase discharged Dawood's mortgage for the home equity line of credit. Deutsche Bank sold the home as a foreclosure on May 14, 2013.

> The crux of this dispute is centered on the insurance proceeds from the fire that destroyed Dawood's residence in December 2010. Following the fire, there was an insurance dispute between Dawood and Farmers, which resulted in settlement discussions in November of 2011. Following the settlement discussions, Dawood filed suit on November 8, 2012 against Farmers in Oakland County Circuit Court. Farmers filed a counter-claim on December 7, 2012.

> On October 1, 2013, Dawood and Farmers entered into a Joint Stipulation ("2013 Joint Stipulation") in which Farmers agreed, amongst other terms, to immediately pay $175,000 for all of [Dawood's] contents claims involving the December 2010 fire in exchange for Dawood's release and discharge of Farmers [from] any and all future liability claims and demands. Farmers also indicated that it would pay either a negotiated settlement amount, or up to the full amount, of the lien on the property held by both Chase and IndyMac.

> On February 14, 2014, Farmers issued a Two-Party Check to both Chase and Dawood in the amount of $596,775.49. Dawood asserts that she obtained an appropriate endorsement of the Two-Party Check by a representative of Chase. Dawood then deposited the check into a Fifth Third Bank account. Dawood and Chase dispute each other's entitlement to the funds from the Two-Party Check issued by Farmers.

*Dawood v. Fifth Third Bank* (hereafter "*Dawood II*"), No. 14-cv-12442, 2015 WL 753374, at *1–2 (E.D. Mich. Feb. 23, 2015). Dawood filed suit in Wayne County Circuit Court in May 2014, seeking a declaratory judgment that she was entitled to the whole amount of the two-party check. Chase removed the case to federal district court and moved to dismiss, chiefly on the ground that Dawood had waived her right to the proceeds from the two-party check when she entered into the Joint Stipulation. In ruling on Chase's motion, the district court found that the Joint Stipulation unambiguously extinguished Dawood's right to any payment from Farmers beyond the $175,000 settlement check. *Dawood v. Fifth Third Bank* (hereafter "*Dawood I*"), No. 14-cv-12442, 2014 WL 5307172, at *3 (E.D. Mich. Oct. 16, 2014). The district court further found that Chase was an intended beneficiary of the Joint Stipulation and that the circumstances surrounding issuance of the two-party check did nothing to divest Chase of its interest in the proceeds from the two-party check. *Id.*; *see also Dawood II*, 2015 WL 753374, at *6. Despite these findings, the district court ultimately denied Chase's motion to dismiss on the ground that Chase had not shown it was entitled to collect the two-party check on Deutsche Bank's behalf. *Id.* at *4.

Chase responded to the district court's order by filing an answer and a counterclaim against Dawood seeking a declaration that it was entitled to all of the proceeds of the two-party check. Chase then filed a new motion for judgment on the pleadings. Chase's motion was supported by a limited power of attorney from Deutsche Bank authorizing Chase to take all action on Deutsche Bank's behalf to enforce and preserve Deutsche Bank's "interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to . . . the pursuit of . . . hazard insurance [claims]."

The district court granted Chase's motion, holding that the limited power of attorney established that Chase had standing to bring suit and to collect the proceeds from the two-party check. *Dawood II*, 2015 WL 753374, at *4. That being so, the district court explained, its earlier findings about the effect of the Joint Stipulation compelled entry of judgment for Chase. *Id.* at *4–6. Accordingly, the district court ordered Fifth Third Bank to tender all of the disputed proceeds to Chase. *Id.* at *6.

Dawood now appeals the district court's decision on several grounds. First, she contends that the Joint Stipulation is ambiguous about "who is going to get paid once the negotiated settlement amount has been determined." Next, she argues that Chase was divested of its standing as a third-party beneficiary to the Joint Stipulation pursuant to an agreement between Dawood and Farmers. Finally, Dawood suggests that when Chase agreed to discharge $635,712.26 owed under the first mortgage, Chase thereby divested itself of any interest in the structural insurance proceeds from the fire.

The Joint Stipulation unambiguously divests Dawood of any interest in proceeds from the two-party check. That is the plain significance of the following language from the release clause in the Joint Stipulation:

> Rafah and Weamm Dawood ("Dawoods") release and discharge Farmers Insurance Exchange of and from any and all liability, claims, demands, controversies, damages, actions, and causes of action, whether at law or in equity, which the Dawoods . . . can, shall, or may have by reason of or in any way resulting from a fire loss which occurred on or about December 30, 2010.

The phrase "any and all liability, claims [and] demands . . . resulting from [the 2010 fire]," clearly encompasses Dawood's claims concerning structural loss proceeds in connection with the 2010 fire. This follows from the fact that the preceding provisions of the stipulation refer only to

the contents claim amount of $175,000 and to the amounts of liens. The Dawoods obviously had no lien in the property, as explained below.

Our conclusion that the release clause in the Joint Stipulation bars Dawood's claims to the proceeds of the two-party check is reinforced by language from Dawood's mortgage. To obtain the mortgage, Dawood "absolutely and irrevocably" assigned to her lender—in whose shoes Chase stands—all of her rights to "any and all judgments and settlements" and "any and all funds received or receivable in connection with any damage to [her] property, resulting from any cause or causes whatsoever, including . . . fire." Especially when read alongside the Joint Stipulation's release clause, the mortgage thus makes clear that Dawood has no interest in insurance proceeds resulting from structural damage to the property. Because the two-party check represents insurance proceeds for structural damage to the property, Dawood has no interest in the proceeds from the check.

Chase, on the other hand, *does* have an interest in the proceeds from the two-party check. Paragraph 2 of the Joint Stipulation states that Farmers will "pay either a negotiated settlement amount or up to the full amount of any liens against the insured property." Dawood contends that this language is ambiguous because it does not explicitly identify to whom payment would be made. The terms of an agreement, however, are to be construed in context, *see Perry v. Sied*, 611 N.W.2d 516, 520 & n.10 (Mich. 2000), and the context of the terms here makes clear that the payment described in Paragraph 2 was due to Chase. It makes no sense to interpret Paragraph 2 as giving Dawood a right to collect "the full amount of any liens against the insured property," since Dawood never held any liens on the property. The only party with an interest in

the liens was the lender, Deutsche Bank, and its agent, Chase.[1]  That payment under the clause

was explicitly tied to the liens clearly implies that the lienor and its agent, *i.e.*, Deutsche Bank

and Chase, were the parties to whom payment was intended.

The district court was also correct in concluding that Chase retained its interest in the

proceeds of the two-party check.  In particular, Farmers' decision to issue the payment as a two-

party check payable to Chase and Dawood cannot reasonably be interpreted as divesting Chase

of its right to payment.  Moreover, emails introduced by Dawood indicate that Farmers issued

the check as a two-party check, not to divest Chase of its interest in payment of the funds, but

because Farmers did not want to be involved in any further litigation commenced by Dawood.

As the district court explained:

> While Dawood asserts that the email shows the "divestiture of Chase of monies,"
> this Court finds that the email only shows that Farmers issued the check to both
> Dawood and Chase in order to allow this Court to determine the Parties' relative
> rights to the funds.  *See* [email] ("Because you are objecting to the Chase payment
> and now believe your client has a claim or interest in the check to be issued to
> Chase, I have instructed Farmers not to issue the check [naming only Chase as
> payee].  This now appears to be a dispute between Ms. Dawood and Chase.  If
> you file suit against Chase, Farmers can deposit the money with the court
> (interplead), or Farmers can issue the payment as a two party check naming both
> Chase and Ms. Dawood.").

*Dawood II*, 2015 WL 753374, at \*6.  The record, in short, lacks evidence that Farmers issued the

two-party check to divest Chase of its interest in the proceeds.

Finally, there is nothing to Dawood's argument that Chase's decision—reflected in an

IRS Form 1099-C—to forgive Dawood's liability for the loan secured by the first mortgage

affected Chase's interest in the proceeds of the two-party check.  By its terms, the first mortgage

entitled Chase to collect "any and all judgments and settlements" and "any and all funds received

or receivable in connection with any damage to [Dawood's] property."  Thus, when the fire

---

[1] On appeal, Dawood does not dispute that the limited power of attorney vests Chase with power to act as Deutsche Bank's agent with respect to Dawood's mortgage.

triggered coverage under Dawood's homeowner's insurance policy, Chase obtained an interest in the policy proceeds. That interest was distinct from Chase's interest in Dawood's debt on the loan secured by the first mortgage, so that forgiveness of Dawood's debt did not divest Chase of its interest in "any and all" proceeds from the policy. The cases Dawood cites are inapposite, inasmuch as they all involve arguments by debtors that a creditor's action discharged an obligation owed by that debtor. That is not the scenario in this case. Accordingly, the district court was correct to conclude that Chase was not divested of its right to receive the proceeds of the two-party check.

The judgment of the district court is affirmed.