J & J FARMER LEASING, INC v CITIZENS INSURANCE
COMPANY OF AMERICA

Docket No. 239069. Submitted September 9, 2003, at Lansing. Decided
February 12, 2004, at 9:05 A.M. Leave to appeal sought.

J & J Farmer Leasing, Inc., Farmer Brothers Trucking Company, Inc.,
Calvin Orange Rickard, Jr. (the Farmer parties, collectively), and
James W. Riley, personal representative of the estate of Sharyn Ann
Riley, deceased (the estate), brought an action in the Washtenaw
Circuit Court against Citizens Insurance Company of America,
alleging bad-faith failure to settle with regard to an underlying
wrongful-death action by the estate against the Farmer parties. The
underlying action resulted in a jury award in excess of $3 million,
of which Citizens, the insurer of the Farmer parties, paid its policy
limit of $750,000 plus costs, fees, and interest, leaving the Farmer
parties liable for the balance of the judgment. The Farmer parties
and the estate then entered an agreement to initiate a joint lawsuit
against Citizens on the basis of an alleged bad-faith failure to settle.
The agreement provided that the remainder of the judgment from
the underlying lawsuit would be paid from any proceeds from the
action alleging bad-faith failure to settle. The agreement also pro-
vided that in return for the Farmer parties' cooperation in bringing
the action, the estate would forbear action to collect the excess of
the underlying judgment from the Farmer parties. Citizens moved
for summary disposition on the basis that the agreement func-
tioned as a release by the estate against the Farmer parties, and
therefore the estate cannot recover from Citizens because the
Farmer parties will not actually suffer a loss for which Citizens can
be held liable. The court, David S. Swartz, J., denied the motion.
Citizens appealed by leave granted.

The Court of Appeals held:

1. The agreement releases the Farmer parties from any obligation
to pay the underlying judgment as long as they perform the duties
and obligations contained in the agreement.

2. The fact that the Farmer parties have entered an agreement to
prevent their financial ruin did not cause the forfeiture of any
recovery from Citizens for its alleged bad-faith failure to settle. The
Supreme Court's holding in *Frankenmuth Mut Ins Co v Keeley*, 433

Mich 525 (1989), and *Frankenmuth Mut Ins Co v Keeley (On Rehearing)*, 436 Mich 372 (1990), requires an insurer found liable for bad-faith failure to settle to pay the excess judgment to the extent the insured would have been able to pay, regardless of the insured's obtainment of a release. The Supreme Court in *Keeley* did not preclude recovery against an insurer for bad-faith failure to settle simply because the insured takes steps to protect itself from an excess judgment that it believes resulted from its insurer's bad-faith failure to settle.

Affirmed.

INSURANCE — ACTIONS — BAD-FAITH FAILURE TO SETTLE.

An insurer may be found liable for its bad-faith failure to settle an underlying action against its insured, which action resulted in a judgment against the insured in excess of the insured's policy limits, to the extent that the insured would have been able to pay the amount of the judgment not paid by the insurer and despite the fact that the insured took steps to protect itself from the excess judgment by obtaining a release from the underlying plaintiff in return for bringing the action alleging bad-faith failure to settle.

*Logeman, Iafrate, Januszewski & Pollard, P.C.* (by *Robert E. Logeman* and *James A. Iafrate*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish, Charles W. Browning,* and *Stephen P. Brown*), for the defendant.

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

HOEKSTRA, J. In this action alleging bad-faith failure to settle a wrongful-death suit, defendant Citizens Insurance Company of America appeals by leave granted the trial court's order denying its motion for summary disposition. In the trial court, and now on appeal, Citizens maintains that the claim against it must be dismissed because an agreement between plaintiffs J & J Farmer Leasing, Inc. (J & J Farmer), Farmer Brothers Trucking Company, Inc. (Farmer Brothers), Calvin Orange Rickard, Jr. (Rickard) (the

Farmer parties, collectively), and James W. Riley, personal representative of the estate of Sharyn Ann Riley, deceased (the estate), who were the opposing parties in the underlying wrongful-death case, essentially released the underlying defendants, the Farmer parties, from any obligation to pay the unsatisfied portion of the judgment in that case. Citizens argues that application of the excess-judgment rule set forth in Justice LEVIN's dissent in *Frankenmuth Mut Ins Co v Keeley*, 433 Mich 525; 447 NW2d 691 (1989) (*Keeley I*), and adopted by our Supreme Court in *Frankenmuth Mut Ins Co v Keeley (On Rehearing)*, 436 Mich 372; 461 NW2d 666 (1990) (*Keeley II*), to the circumstances presented here bars an award of damages against it and requires dismissal of this case. We conclude that application of the *Keeley*[1] decision does not prevent an award of damages, and we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs filed this action after the estate received a jury award in excess of $3 million against the Farmer parties for the wrongful death of Sharyn Ann Riley. The decedent died when a semitrailer and tractor owned by J & J or Farmer Brothers and driven by their employee, Rickard, swerved into the lane in which the decedent was driving, colliding head-on with the decedent's vehicle. Citizens was the insurer of the defendants in the underlying case and provided a defense. Subsequently, Citizens paid its policy limit of $750,000, plus related costs, fees, and interest, leav-

---

[1] Because in *Keeley II* the Supreme Court adopted Justice LEVIN's dissent in *Keeley I* without republishing the dissent, we refer to the Supreme Court's decision in whole as *Keeley*.

ing the Farmer parties liable for the balance of the judgment.

Thereafter, plaintiffs herein, i.e., both the plaintiff and the defendants in the underlying suit, joined together and entered an agreement pursuant to which plaintiffs would initiate a joint lawsuit against Citizens on the basis of bad-faith failure to settle the wrongful-death action, among other things, and later pay the remainder of the judgment from the underlying lawsuit out of any proceeds of this suit.[2] Plaintiffs then filed the instant case. After discovery, Citizens moved for summary disposition, asserting alternate grounds with respect to the bad-faith claim. The circuit court granted summary disposition in favor of Citizens, concluding that Citizens could not be liable for bad faith because before trial Citizens had offered to settle for the policy limit. Plaintiffs appealed the grant of summary disposition, and this Court reversed, holding that under the facts presented, "a reasonable fact-finder could conclude that defendant rejected a reasonable settlement offer within the policy limit, unduly delayed in accepting a reasonable offer to settle within the policy limit when the verdict potential was high, and repeatedly disregarded the advice of counsel." *J & J Farmer Leasing, Inc v Citizens Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 1999 (Docket No. 209236). This Court remanded the case for further proceedings.[3]

---

[2] The Farmer parties later assigned their claims to James Riley as personal representative of the estate of Sharyn Riley, deceased, pursuant to the terms and conditions of the agreement between the parties.

[3] The circuit court also concluded, and this Court agreed, that Citizens had no contractual or statutory obligation to include prejudgment interest in its offer to settle for the policy limit before trial. *Id.*

After the remand, Citizens again filed a motion for summary disposition in the trial court, reasserting the alternate ground.[4] Citizens argued that the action must be dismissed because the decedent's estate entered into an agreement with the Farmer parties to "forever forebear"[5] any action to collect the excess judgment from Citizens' insured. It is undisputed that the estate collected from Citizens the policy limit of $750,000, plus costs, interest, and attorney fees, leaving an unsatisfied judgment and accrued interest of over $2.5 million. However, Citizens contends that it was entitled to summary disposition essentially because the agreement between the instant plaintiffs functions as a release by the estate of the judgment against the underlying defendants. According to Citizens, because the agreement provides that the estate forever forbears any action to collect from the Farmer parties the unpaid portion of the judgment, the estate cannot recover from Citizens because the insured will not actually suffer a loss for which Citizens can be held liable. In ruling on Citizens' motion for summary disposition, the trial court stated that "a covenant not to execute on a judgment in exchange for assignment of a bad faith claim does not necessarily operate to extinguish the underlying judgment." Noting that it is undisputed that J & J Farmer is a collectable entity, the trial court denied Citizens' motion for summary disposition for the reasons stated in plaintiffs' briefs. Citizens sought leave to appeal the

---

[4] Although Citizens asserted this alternate ground for summary disposition in its first motion for summary disposition, the trial court did not rely on this ground in granting that motion.

[5] We recognize that the word "forebear" in the agreement is merely a misspelling of "forbear," and the parties do not suggest otherwise.

trial court's order denying its motion, and this Court granted leave.

II. STANDARD OF REVIEW AND APPLICABLE LAW

We review de novo a trial court's grant or denial of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Citizens' motion requested summary disposition pursuant to MCR 2.116(C)(10), which tests the factual support of a claim. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). "In evaluating a motion for summary disposition brought under [MCR 2.116(C)(10)], a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion" to determine whether a genuine issue regarding any material fact exists. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Also, resolution of the instant appeal requires contractual interpretation. It is well-established that contracts are to be construed in their entirety. *Perry v Sied*, 461 Mich 680, 689; 611 NW2d 516 (2000). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v Chrysler Corp*, 445 Mich 109, 127 n 28; 517

NW2d 19 (1994); see also *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). Moreover, "[i]f the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). When the language of a contract is unambiguous, courts construe and enforce the contract as written. *Quality Products, supra.*

### III. ANALYSIS

#### A. INTRODUCTION

On appeal, Citizens maintains that even if plaintiffs in this case can prove their claim of bad-faith failure to settle, no monetary damages can be awarded on that claim. To sustain this position, Citizens relies on the excess-judgment holding of *Keeley*. Citizens argues that *Keeley* limits judgments to the amount that an insurer is able and obligated to pay. Pointing to the language of the agreement between the Farmer parties and the estate, Citizens contends that the Farmer parties have been released from paying the underlying judgment. Having been released, Citizens maintains that the holding of *Keeley* operates to preclude an award of damages because the Farmer parties are no longer obligated under the judgment. Before undertaking an analysis of Citizens' argument, we first set forth in some detail the pertinent provisions of the agreement between the estate and the Farmer parties and the reasoning of *Keeley*.

### B. PLAINTIFFS' AGREEMENT

As previously stated, the plaintiff and the defendants in the underlying case, i.e., plaintiffs herein, entered into an agreement concerning the alleged bad-faith failure to settle by Citizens. The agreement indicates that Citizens had undertaken to defend the underlying wrongful-death suit, and the estate would have settled for Citizens' insurance policy limit at the onset of litigation, but Citizens "negligently and in bad faith" took the underlying suit to trial anyway. The trial resulted in a judgment against the underlying defendants in the amount of $3,214,916.97, plus costs, interest, and attorney fees, which is greatly in excess of Citizen's $750,000 policy limit. After Citizens paid the policy limit plus costs, interest, and attorney fees, the unsatisfied balance and accrued interest exceeds $2.5 million.

The agreement covers, among other things, the intent and responsibilities of the parties. Paragraph 9 recites the separate desires of the individual parties to the agreement, including, in part, the Farmer parties' desire to pursue a bad-faith claim against Citizens and seek "a means to satisfy the outstanding balance of the [j]udgment which is currently outstanding against them . . . ." The estate desired payment of that same outstanding balance. Paragraph 10 lists the parties' actual agreements "[t]o satisfy the separate desires of these litigants . . . ." Central to Citizens' argument is paragraph 10(b), which provides:

> That the Plaintiff [the estate] agrees to *forever forebear* any action to collect any monies to satisfy the unpaid portion of the Judgment that the Plaintiff has against the Defendants [the Farmer parties], in exchange for which the

> Defendants do hereby grant to the Plaintiff a lien on any proceeds of any bad faith claim, negligence claim, contract claim or intentional tort claim as set forth herein. [Emphasis supplied.]

In pertinent part, paragraph 10 provides that the parties will jointly sue Citizens for failing to settle the underlying lawsuit and sets up the details of that suit. Paragraph 10(e) requires the Farmer parties to fully cooperate with the estate in pursuing the joint lawsuit against Citizens. Also relevant is paragraph 10(f), which provides:

> In the event that any of the Defendants [the Farmer parties] shall fail to: (1) execute pleadings necessary to prosecute the lawsuit; (2) attend meetings with counsel; (3) comply with discovery; or (4) attend evidentiary hearings or trial as needed in the discretion of counsel, the Plaintiff [the estate] shall notify the offending party in writing of its breach of this agreement, specifying the act or omission which constitutes the alleged breach and the means by which the offending party shall cure the breach. Thereafter, the offending party shall have fifteen (15) days in which to perform the specified corrective action (eg. supply documents, answer interrogatories, or attend a deposition or meeting). If the offending party fails to timely cure its breach or its breach is not capable of being cured (i.e. the lawsuit is dismissed as a result of the offending party's conduct), then the Plaintiff may declare this Agreement null and void as to the offending party, only, but not as to any other Defendant. In that event, and that event only, is the Plaintiff permitted to take action to collect the unpaid portion of the Judgment from the offending party.

The agreement also contains an integration clause: "This is the entire agreement between these parties and no other agreement either written or oral exists between these parties for the purpose of resolving these issues of mutual concern."

C. LEGAL CONTEXT AND THE *KEELEY* DECISIONS

It is undisputed that

> an insurer is liable to its insured for a judgment exceeding
> policy limits when the insurer, who has exclusive control of
> defending and settling the suit, refuses to settle within pol-
> icy limits in "bad faith." [*Commercial Union Ins Co v Medi-
> cal Protective Co*, 426 Mich 109, 116; 393 NW2d 479 (1986),
> citing *City of Wakefield v Globe Indemnity Co*, 246 Mich
> 645, 648; 225 NW 643 (1929).]

If it is determined that the insurer acted in bad faith, the question turns to the measure of the insured's damages. As Citizens points out, our Supreme Court has discussed this issue in *Keeley II*, 436 Mich 372, in which our Supreme Court adopted Justice LEVIN's dissent in *Keeley I*, 433 Mich 525.

In its original decision, *Keeley I*, the Supreme Court discussed the appropriate measure of damages an insured may be awarded against an insurer in a claim for bad-faith breach of the duty to settle when, in the underlying claim, the plaintiff receives a verdict in excess of the insurance policy limits. Justice ARCHER explained:

> There are two schools of thought regarding the remedy
> for an insurer's bad-faith breach of its duty to settle. The
> jurisdictional split is distinguished by the following doc-
> trines: the prepayment rule and the judgment rule. The
> older prepayment rule is the doctrine, adopted by a minor-
> ity of jurisdictions, which dictates that an insurer may be
> held liable in an "excess" case *only* if part or all of the judg-
> ment has been paid by the insured. The judgment rule,
> adopted by a majority of jurisdictions, commands an
> insurer to pay an excess judgment in instances of bad faith,
> so that the insured need not make any payment nor have
> the capacity to pay any part of the judgment in order to

recover the excess amount from the insurer. [*Keeley I, supra*, 433 Mich 535 (A_RCHER_, J.).]

Justice L_EVIN_ in his dissenting opinion in *Keeley I* agreed with the majority in *Keeley I* that the judgment rule is the approach preferred over the prepayment rule, noting that "[a]n insured should not be required to sell assets or borrow money to pay a judgment in order to maintain an action against the insurer for bad faith in failing to settle a claim within policy limits." *Id.* at 553-554. He explained, however, that adoption of the judgment rule approach does not "justify eliminating the sense of the prepayment rule that the insurer should not be required to pay more than the insured *is able* to pay on the judgment." *Id.* at 554 (emphasis supplied). Justice L_EVIN_ agreed with decisions in other jurisdictions where the courts held that the insured must make some showing that it has suffered damages before it may proceed against an insurer that acted in bad faith. *Id.*, citing *Gordon v Nationwide Mut Ins Co*, 30 NY2d 427, 441; 285 NE2d 849 (1972). Justice L_EVIN_ referred to the following from Keeton & Widiss, Insurance Law, § 7.8(i)(1), pp 899-900:

> "When it seems almost certain the insured will never pay anything at all on the excess judgment if the claim against the insurer is denied, arguments that the insured has been damaged by the increase in debts are rather weak support for any cause of action at all, much less for a measure of damages equal to the amount of the increase in the insured's debts. However, other courts have concluded that the entry of judgment against a person constitutes a loss and that the insured's 'loss does not turn on whether the judgment has been satisfied.' Since, absent a discharge of the obligation through a bankruptcy proceeding, the third party's judgment can remain as an outstanding obligation

for extended periods of time, in many circumstances there is considerable uncertainty in regard to predicting whether the insured may ultimately have resources or assets that may be taken to satisfy some portion of the judgment.

"Third party claimants are not in a position to assert that they were harmed as a result of the insurer's conduct in regard to having not settled the tort claim. The insurer's duty was to the insured, not to the claimant. Furthermore, in one sense, a third party benefits from the insurer's refusal to settle because the insurer's refusal to settle resulted in the claimant's obtaining a judgment in excess of the amount the claimant had offered to accept in settlement. Thus, although the third party claimant deserves further compensation, the theoretical justification for imposing liability on the insurer, which is harm to the insured, does not warrant a recovery by such a claimant any more than the innocent victims of an underinsured tortfeasor would be entitled to indemnification beyond the amount of the applicable coverage from a liability insurer who had not refused a settlement." [*Keeley I, supra*, 433 Mich 555-556.]

Justice LEVIN's dissent proposed a compromise between the prepayment rule and the judgment rule:

[T]hat this Court accept the essence of the judgment rule by eliminating the need to show partial payment, but provide protection for insurers along the lines of the prepayment rule by precluding collection on the judgment from the insurer beyond what is or would actually be collectable from the insured. [*Keeley I, supra*, 433 Mich 565.]

In *Keeley II*, our Supreme Court, by adopting Justice LEVIN's dissent in *Keeley I*, accepted the proposed compromise.[6]

---

[6] In *Keeley II*, the Supreme Court noted that its

decision on the causal relationship between any bad faith and the excess judgment against [the insured] does not address the issue which this Court originally decided and granted rehearing to con-

### D. APPLICATION

Resolution of whether the trial court erred in denying Citizens' motion for summary disposition requires a two-part analysis. The first aspect is whether the agreement between the estate and the Farmer parties operated to release the Farmer parties from paying the unsatisfied portion of the underlying judgment. If released, the question becomes whether plaintiffs can establish damages in the action alleging bad-faith failure to settle.

Turning first to the question whether there was a release, we agree with Citizens that the language of the agreement indisputably releases the Farmer parties from any obligation to pay the underlying judgment as long as they perform the duties and obligations contained in the agreement.[7] Paragraph 10(b) of

---

sider, namely, whether this Court should reconsider the version of the excess-judgment rule adopted in our original opinion, and adopt the rule set forth in Justice LEVIN's dissenting opinion. While this Court could simply vacate its original opinion upon the basis of bad faith and its causal relationship to the excess-judgment issues, we prefer to resolve the excess-judgment issue at this time. [*Keeley II, supra,* 436 Mich 376.]

Having said that, the Supreme Court adopted the rule articulated in Justice LEVIN's dissent.

[7] We note that the issue raised in this appeal arguably is prematurely presented to us because for Citizens to show that the Farmer parties are no longer exposed to liability in connection with the unsatisfied portion of the underlying judgment, the Farmer parties will have had to have performed their obligations under the agreement. Paragraph 10(f) of the agreement requires the individual Farmer parties to cooperate in activities associated with the lawsuit, including the attendance at evidentiary hearings and trial, as needed; failure to do so renders the agreement "null and void" with regard to the individual Farmer parties. Because trial is still pending, the possibility remains that the Farmer parties may breach the agreement and thereby forfeit the forbearance from collection to which the estate has agreed. However, we decline to resolve this appeal on this limited basis because this Court granted leave to address the substantive issue presented and trial of this action alleging bad-faith failure to settle

the agreement provides that the estate agrees to forever forbear "any action to collect any monies to satisfy the unpaid portion of the Judgment that the [estate] has against the [Farmer parties]." In light of the express language of the agreement and construing the agreement in its entirety in an effort to honor the intent of the parties, *Perry, supra*; *Rasheed, supra*, it is apparent that the estate intended for the Farmer parties to be relieved of responsibility for paying the excess judgment in return for their cooperation in seeking recovery from Citizens for its alleged bad-faith failure to settle the underlying action.

Plaintiffs respond by arguing that the agreement contains a covenant not to sue, rather than a release. However, plaintiffs fail to explain why, in the context of this case, that distinction would make a difference. Regardless of whether the agreement contains a release or a covenant not to sue, the net effect is the same, i.e., the Farmer parties are no longer obligated to pay the underlying judgment.[8] Relief from the obligation to pay is the key component to triggering the holding of *Keeley* and ultimately determining whether plaintiffs in this case can prove damages.[9] We also find unavailing plaintiffs argument that the agreement

---

has been placed on hold for many months pending our resolution of this appeal. We believe that under these circumstances it would be manifestly unfair to all the parties for us to fail to address the central issue before us. Further, none of the parties argues, nor do we think it reasonable to think, that the Farmer parties will fail to comply with this agreement, especially in light of the fact that failure to perform will leave the Farmer parties responsible for the excess judgment and accrued interest that exceeds $2.5 million.

[8] See *Industrial Steel Stamping, Inc v Erie State Bank*, 167 Mich App 687, 693; 423 NW2d 317 (1988).

[9] To the extent that both Citizens and the Farmer parties discuss in their briefs the instant agreement, particularly the "forever forebear" language, as different from, or similar to, the agreement in *Keeley*, neither

cannot be enforced for lack of consideration. The agreement contains several mutual agreements that support a finding that consideration was given. Whether the consideration was adequate is not for us to decide. *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 239; 644 NW2d 734 (2002).

Having concluded that plaintiffs' agreement in this case operates to release the Farmer parties from paying the unsatisfied portion of the underlying wrongful-death judgment, we now must determine whether the release precludes an award of damages in the case alleging bad-faith failure to settle. We begin by acknowledging the straightforward and compelling logic of Citizens' argument. Citizens interprets *Keeley* to have established certain principles regarding damages in cases alleging bad-faith failure to settle. Those principles as stated by Citizens include that the "damages are limited to sums that are legally collectable from the insured, [*Keeley I, supra*, 433 Mich] at 546-[5]47; and such damages are further limited to the economic loss actually suffered by the insured. *Id.* at 557-562." When applied to the instant case, Citizens argues that its insured, the Farmer parties, cannot establish any pecuniary harm because the release contained in the agreement relieves them of any obligation to pay any amount over the policy limits. Consequently, Citizens concludes that no damages can be awarded in this case and that the trial court therefore erred in denying Citizens' motion for summary disposition. Although the reasoning that Citizens offers is an arguably correct interpretation of how *Keeley*

argument is helpful in light of the absence in *Keeley* of any analysis of the underlying agreement.

might be applied to the circumstances presented in this case, it is one that we decline to adopt.

The principal reason we decline to agree with Citizens' interpretation of the holding of *Keeley* and its application to the facts of the present case is that it would turn what our Supreme Court intended to be a shield into a sword. In *Keeley*, our Supreme Court provided a shield to guard insurers found liable for bad-faith failure to settle from paying the judgment balance that the insured could not have paid fully. Here, Citizens attempts to turn the shield provided in *Keeley* into a sword to escape any payment on an excess judgment, despite the insured's ability to pay some or all of it, merely because the insured assigned the bad-faith claim to the judgment holder[10] and in exchange obtained relief from paying the underlying judgment. We believe that the application of the holding of *Keeley* in the manner advanced by Citizens is contrary to the purpose and intent of Justice LEVIN's dissent.

In his dissent, Justice LEVIN proposed

> a compromise between the prepayment and the judgment rule: that this Court accept the essence of the judgment rule by eliminating the need to show partial payment, but provide protection for insurers along the lines of the prepayment rule by precluding collection on the judgment from the insurer beyond what is or would actually be collectable from the insured. [*Keeley I, supra*, 433 Mich 565.]

In adopting a compromise between the judgment rule and the payment rule, our Supreme Court sought to impart fairness and to find a balance between the two

---

[10] We note that such assignments are permissible. *Rutter v King*, 57 Mich App 152, 162; 226 NW2d 79 (1974).

general approaches concerning the remedy for an insurer's bad-faith failure to settle. By precluding collection on the judgment beyond what is or would be collectable from the insured, the Court prevents the injured third-party from collecting from the insured's insurer amounts that otherwise would not be collectable. Citizens seeks to limit collection to "what is or would actually be collectable from the insured," *Keeley I, supra*, 433 Mich 565, without regard to the Court's analysis in arriving at this conclusion. Read in its entirety, the *Keeley* decision is concerned with how much is or would be collectable from the insured to limit the insurer's liability in a fair manner. In light of the public policy extended by the Supreme Court, we are not persuaded by Citizens' vision of eluding payment regardless of bad-faith failure to settle where the insured has taken measures to protect itself with regards to what it deems its insurer's bad-faith failure to settle. We cannot conclude, as Citizens suggests, that the fact that the Farmer parties have entered into an agreement to prevent financial ruin resultantly caused the forfeiture of any recovery from Citizens for its alleged bad faith. Rather, we believe that *Keeley* requires an insurer found liable for bad-faith failure to settle to pay the excess judgment to the extent the insured would have been able to pay, regardless of the insured's obtainment of a release. To hold otherwise would be to evade the intent of our Supreme Court and cause a windfall for the insurer on the basis of the insured's savvy in saving itself from potential financial ruin, which saving action needed to be done only as a result of the insurer's alleged bad faith in causing an excess judgment

against its insured.[11] An insured should not be penalized for devising or taking advantage of a method of avoiding financial loss allegedly flowing from the bad faith of its insurer, nor should an insurer benefit from its insured's maneuverings to protect itself.

With respect to the rule adopted in *Keeley*, we believe that our Supreme Court did not, nor did it intend to, preclude recovery against an insurer for bad-faith failure to settle simply because the insured takes steps to protect itself from an excess judgment that it believes resulted from its insurer's bad-faith failure to settle. Here, should the trial court determine that Citizens' engaged in a bad-faith failure to settle the claim against the Farmer parties, then it should utilize the guidelines in the *Keeley* decision to determine the amount of damages payable by Citizens, i.e., the trial court shall preclude "collection on the judgment from [Citizens] beyond what is or would actually be collectable from [the Farmer parties]." *Keeley I, supra*, 433 Mich 565.

In sum, Citizens was not entitled to summary disposition.

Affirmed.

---

[11] Moreover, we believe that our interpretation of the *Keeley* Court's policy decision is supported by the Court's reference in a footnote to Keeton's comment on the extent of liability. *Keeley I, supra*, 433 Mich 562 n 27. In this comment, which the Supreme Court extensively quotes, Keeton expressed that " '[i]t should be possible to formulate a workable doctrine (1) that fully protects the insured from loss, (2) that does not result in eliminating the "penalty" on the insurer, and (3) that does not produce a "windfall" for the third party claimant.' "